IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Misty Clark, | : | |
| Plaintiff | : | Civil Action 2:11-cv-00980 |
| v. | : | Judge Sargus |
| Ryan Britton, | : | Magistrate Judge Abel |
| Defendant | : | |

**Report and Recommendation**

Plaintiff Misty Clark, a former State prisoner at the Ohio Reformatory for Women ("ORW"), brings this action against defendant Ryan Britton alleging violations of her Eighth Amendment right to be free of cruel and unusual punishment. This matter is before Magistrate Judge on defendant Ryan Britton's April 26, 2013 motion for summary judgment (doc. 31).

**I.  Allegations in the Complaint**

Plaintiff Misty Clark was incarcerated at the Ohio Reformatory for Women at the time of the incidents alleged in the complaint. Compl. ¶ 4. Because of her exemplary behavior while incarcerated, Clark was a participant in the canine program, an honors program that allows inmates to train service dogs. *Id.* at ¶ 7.  On April 21, 2009, shortly before midnight, defendant Officer Britton summoned Clark from her dorm and

1

brought her to the laundry room. *Id.* at ¶ 9. In the laundry room, Britton unzipped his pants and forced Clark to perform oral sex on him. *Id.* at ¶ 12.

When Clark was brought back to her room, she wanted to report the assault, but she believed if she did so she would placed in administrative segregation. *Id.* at ¶ 16. Clark felt uncomfortable staying in the canine program because Britton was posted there. *Id.* at ¶ 17. On May 11, 2009, she told a mental health caseworker that she no longer wished to participate in the program without providing a reason. *Id.* On May 29, 2009, Clark was moved out of the program. *Id.*

On July 14, 2009, Clark informed Corrections Officer Cox about the assault. *Id.* at ¶ 18. On July 16, 2009, Clark confided in her parenting supervisor, Sergeant Rinehart, who told Clark that the assault had to be reported. *Id.* at ¶ 19. On August 18, 2009, Ohio State Highway Patrol Troopers interviewed plaintiff. *Id.* at ¶ 20.

On September 17, 2011, Clark was transported to the office of the Ohio State Highway Patrol where she was given a polygraph examination. *Id.* at ¶ 22. The polygraph examiner concluded that Clark showed no signs of deception and was telling the truth when she said that Britton forced her to perform oral sex on him. *Id.*

    II.    **Arguments of the Parties**

        A.    **Defendant Officer Ryan Britton**

Defendant argues that the evidence establishes that plaintiff falsified her allegations against Britton; that she had a motive to fabricate allegations against Britton; and, her allegations are not plausible given the physical layout and construction of the

dorm at issue. Defendant also relies on the conclusion of the Union County Assistant Prosecuting Attorney that no corroborating evidence supported plaintiff's allegations.

Defendant maintains that plaintiff made contradictory allegations in her statements to the institutional investigator at ORW and to the Ohio State Highway Patrol. Defendant argues that it is unreasonable to believe that Britton could have obtained plaintiff's attention by waiving to her through the eight inch square window in her closed bedroom door and that plaintiff repeatedly climbed in and out of her top bunk and opened and shut the door to her bedroom without waking the other inmates in the room.

Defendant also relies on discrepancies in her statements to the Ohio state Highway Patrol. In her statement, Clark claimed that Britton was not at work for the next couple of days, but in her statement to the ORW, plaintiff claimed that he returned the next night. Defendant also relies on the statements made by inmates concerning plaintiff's alleged comments she made to them about the time in question.

Defendant's motion for summary judgment is supported by statements by inmates who stated that they never saw Britton engage in inappropriate conduct with plaintiff or any other inmate. Plaintiff's bunkmate denied ever seeing Britton motion for plaintiff to come our of the cell or that plaintiff mentioned Britton's failure to lock their door. Defendants suggests that plaintiff waited until July 2009 to complaint about the alleged incident because it allowed her ample to time to formulate her story and she avoided the grievance process as required under the Prison Litigation Reform Act.

3

Plaintiff's three month delay in reporting her allegations prevented ORW from timely interviewing inmates prior to their transfers and/or release and DNA testing of plaintiff's sweatpants. Without Amanda Ritter's incident report, counsel for defendant would not have been able to contact any inmates with any recollection of the matter.

Defendant argues that the evidence in this case is so one-sided that no reasonable jury could find in favor of the plaintiff. Plaintiff has offered nothing more than her unsupported, contradicted and self-serving accusations. Defendant, on the other hand, has offered the declarations of others, including inmates who refused to corroborate plaintiff's allegations and to whom she admitted that she had fabricated the allegations.

Defendant also maintains that he is entitled to qualified immunity. Defendant contends that an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. According to defendant, a state employee may be able to successfully assert the qualified immunity defense even though he violated a clearly established constitutional right. Defendant argues that the focus of the qualified immunity is not whether the constitutional right was established, but whether a reasonable state employee could have believed that his actions violated clearly established constitutional rights.

### B. Plaintiff Misty Clark

Plaintiff argues that Britton is asking this Court to weigh and decide the credibility of the witnesses and accept Britton's version of events as true. Plaintiff maintains, however, that there are genuine issues of fact that a jury must resolve. Clark

4

contends that this case involves two diametrically opposed versions of what happened between her and Britton. Clark maintains that Britton sexually assaulted her, and Britton insists that he did not.

In support of his Britton's motion, he attaches the declarations of four inmates who either claim that Clark is lying or that they did not observe any inappropriate conduct on the part of Britton. Britton also attached the declarations of Amanda Shirk, a nurse at ORW and defendant Britton's sister, and Rick Rodger, an Assistant Union County Prosecuting Attorney. Plaintiff maintains that neither Shirk or Roder's testimony would be admissible at trial. Shirk states that two inmates told her that Clark had told them that she was lying, but this statement is inadmissible hearsay. While it is true that no DNA evidence was found, this makes sense given that Clark's sweatpants had been washed numerous times after the assault. Rodger's decision to not to prosecute is irrelevant given that a different burden of proof applies in criminal and civil cases. Clark maintains that if defendant intends to call Rodger to testify regarding his decisions not to prosecute, his testimony would arguably open the door to evidence that Clark passed a polygraph test concerning her version of events and that Britton refused to take a polygraph test.

In his deposition, Britton testified that it was not appropriate to provide any personal information to inmates concerning where he lived or about his family. When she made her statement to investigators, Clark reported that Britton had told her that he was from Kenton and that he had children. The fact that Britton is in fact from Kenton

5

and does have children corroborates Clark's account of the conversation between them. Plaintiff further argues that the fact that Britton submitted more declarations in support of his motion than Clark attached to her response does not mean that a jury would necessarily find in Britton's favor. Plaintiff maintains that just as she is vulnerable to attacks on her credibility because of her status as a convicted felo, so too are the four inmates who offered declarations in support of Britton's motion for summary judgment.

### III.     Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a

party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### IV.     Discussion

Defendant Clark submitted the following declarations in support of his motion for summary judgment:

- <u>Declaration of Ryan I. Britton (doc. 31-3)</u>: Britton submitted a declaration stating that he never engaged in any sexual contact with Clark.

- <u>Declaration of Inmate M (doc. 31-2)</u>: Inmate M submitted a declaration stating that she observed plaintiff flirting with Britton, who either ignored her or redirected her away from him. On one occasion, Britton told Clark

to go away, and she responded by saying "Stupid Mother Fucker." During another incident, Clark stated that she "going to get him." Inmate M states that Clark approached her and said that she had sex with Britton and that he left the door open so she could sneak out to be with him. Clark also stated to Inmate M that maybe she didn't have sex with Britton but her accusation was going to get her home. Inmate M contacted Amanda Shirk and told her that plaintiff fabricating allegations about Britton. Inmate M indicated that Britton was an extremely professional and kind correction officer.

- <u>Declaration of Inmate W (doc. 31-5)</u>: Inmate W stated that she resided with Clark when she was housed in JG Cottage at ORW. At some point, Clark informed Inmate W that Britton had forced her to have oral sex with him. Clark seemed angry. She later reported that she had anal sex with Britton but that no one believed her. Inmate W did not believe her accusations because she kept changing her story and because of the layout of JG Cottage. She stated that JC Cottage had a narrow hallway with inmate rooms running down the length of the hallway and a small laundry room set between the rooms. A vent system runs between the rooms and the laundry rooms. Inmates communicate through the vent system, and a whispered conversation in the laundry room can be overheard in most, if not all of the inmate rooms. Clark informed Inmate W that Britton had

8

been fired as a result of her accusations, and Clark became visibly angry when Inmate W called her a liar. Inmate W contacted ORW nurse Amanda Shirk and told her that Clark said she got Britton fired for false allegations of sexual misconduct. Inmate W described Britton as one of the most professional, caring, and by the book correction officers.

- <u>Declaration of Inmate L (doc. 31-9)</u>: Inmate L stated that she was Clark's roommate and shared the same bunk. At no point did Inmate L observe Britton motion for Clark to come out of the room. She never observed any inappropriate conduct on the part of Britton.

- <u>Declaration of Inmate C (doc. 31-11)</u>: Inmate C stated that she Clark's roommate. Clark showed her a clothing item that appeared to be a man's brief and said it belong to Britton. Clark bragged to her about being in the laundry room with Britton and that he would bring food to her. She never observed any inappropriate conduct on the part of Britton.

- <u>Declaration of Nurse Shirk (doc. 31-4)</u>: Shirk stated that on September 30, 2009 an inmate approached her about allegations that were made about her brother. The inmate informed her that Clark had told her and four other inmates that the allegations of sexual misconduct were not true. The following day a second inmate informed her that Clark was being untruthful about her allegations. Shirk was instructed to write an incident report, which she did. The incident report was attached her declaration.

9

Plaintiff submitted a declaration stating the facts alleged in her complaint. *See* doc. 36-1. Clark also responded to the declarations attached to the motion. She stated that she never flirted with Britton. She never stated that she had anal sex with defendant. She disagrees with the assertion that a whispered conversation in the laundry room could be heard through the vents. She also denied ever stating that she got Britton fired.  Clark stated that simply because a roommate did not see Britton motion to her to come out of the room does not mean that it did not happen. Plaintiff also denied the allegations that she showed another inmate Britton's underwear, bragged about being in the laundry room, or that he brought her food.

Here, there is a question of material fact. Clark alleges that she was forced to perform oral sex on defendant; Britton maintains that the incident never occurred. Although defendant relies on the affidavits of inmates to support his position, a jury must hear their testimony and make credibility determinations. Plaintiff, on the other hand, maintains that her version is supported by the fact that she voluntarily left the canine program, a special program designed for inmates who exhibited exemplary behavior. Clark was also aware of personal information concerning Britton, which he maintained he would not have shared with inmates. Summary judgment is inappropriate where, as here, a case turns on the credibility of the witnesses.

Defendant argues that he is entitled to qualified immunity.  Determining whether qualified immunity is appropriate is a three step inquiry.  First, the Court determines whether a constitutional violation occurred. *Centanni v. Eight Unknown*

*Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Second, the Court determines whether the alleged conduct of the defendants violated a clearly established statutory or constitutional right of which a reasonable person would have been aware. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). If the right is clearly established, the Court must determine whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what the defendant allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

Here, Britton is not entitled to qualified immunity because the right of inmates to be free from cruel and unusual punishment is clearly established. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In the event that plaintiff's allegations are accepted by the trier of fact, it cannot be said that his conduct resulted from a reasonable but mistaken belief.

## V.     Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendant Ryan Britton's April 26, 2013 motion for summary judgment (doc. 31) be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel
United States Magistrate Judge
