UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MISTY CLARK,

    Plaintiff,

v.

RYAN BRITTON,

    Defendants.

Case No. 2:11-cv-980
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

Plaintiff Misty Clark, a former prisoner at the Ohio Reformatory for Women, brings this action against Defendant Corrections Officer Ryan Britton alleging violations of her Eighth Amendment right to be free from cruel and unusual punishment. This matter is before the Court on (1) Defendant's Objection to the Report and Recommendation of the Magistrate Judge (ECF No. 42), which recommended denying Defendant's Motion for Summary Judgment (ECF No. 31) and (2) Plaintiff's Motion for Leave to File Untimely Response to Objection (ECF No. 43). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and **OVERRULES** Defendant's Objection.

I.

Plaintiff Misty Clark was incarcerated at the Ohio Reformatory for Women ("ORW") at the time of the incidents alleged in her complaint in this action. While incarcerated at ORW, Plaintiff participated in the canine program, an honors program that allows inmates to train service dogs. Plaintiff alleges that on April 21, 2009, shortly before midnight, Defendant Officer Ryan Britton summoned her from her dorm and brought her to the laundry room, at which time

1

he unzipped his pants and forced her to perform oral sex on him. Plaintiff did not report the alleged event for three months, claiming that she feared retaliation, which she believed had been the fate of other inmates who accused a staff member of a sexual assault.

On May 11, 2009, Plaintiff withdrew from the dog program. Plaintiff avers that she no longer wanted to participate because it required her to be in the dorm at which Defendant worked.

On July 14, 2009, Plaintiff informed a Corrections Officer of the alleged assault. On July 16, 2009, Plaintiff informed her Parenting Supervisor of the alleged assault. One of these individuals reported her allegations to the proper authority at ORW.

On August 18, 2009, the Ohio State Highway Patrol, which investigates reports of serious crimes occurring in the Ohio prison system, interviewed Plaintiff about the incident. On September 17, 2011, Plaintiff was transported to the office of the Ohio State Highway Patrol where she was given a polygraph examination. The polygraph examiner concluded that Plaintiff showed no signs of deception when she said that Officer Britton forced her to perform oral sex on him. The state prosecutor declined to prosecute this case against Defendant.

On November 2, 2011, Plaintiff filed the instant action under 42 U.S.C. § 1983, alleging violation of her constitutional right to be free from cruel and unusual punishment. On April 26, 2013, Defendant moved for summary judgment. On August 26, 2013, Magistrate Judge Mark R. Abel issued a Report and Recommendation in which he recommended that Defendant's Motion for Summary Judgment be denied.

On August 26, 2013, Defendant filed an Objection to the Report and Recommendation. On September 11, 2013, two days after her memorandum in opposition was due, Plaintiff filed a

Motion for Leave to File Out of Time, in which she requests permission to file a Memorandum in Opposition to Defendant's Objection. Plaintiff attached to her motion her Memorandum in Opposition. On October 3, 2013, Defendant filed a "Response" to Plaintiff's Motion for Leave to File Out of Time, in which he indicates that he "does not necessarily oppose the late filing," but instead takes issue with Plaintiff's "continual misrepresentation of Defendant's Objections." Thus, Defendant does not oppose Plaintiff's Motion provided the Court accepts his reply to Plaintiff's Memorandum in Opposition to Defendant's Objection. The Court shall consider both Plaintiff's Memorandum in Opposition and Defendant's Response, and therefore **GRANTS** Plaintiff's Motion.

## II.

Upon a party's objection to a magistrate judge's report and recommendation on a dispositive motion, 28 U.S.C. § 636(b)(1) provides that a district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."

In his report, Magistrate Judge Abel considered Defendant's Motion for Summary Judgment. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

### A. Report and Recommendation

In the Report and Recommendation, Magistrate Judge Abel accurately reviewed the arguments of the parties and the evidence upon which the arguments were based, starting first with Defendant:

> Defendant argues that the evidence establishes that plaintiff falsified her allegations against [him]; that she had a motive to fabricate allegations against [him]; and, her allegations are not plausible given the physical layout and construction of

4

the dorm at issue. Defendant also relies on the conclusion of the Union County Assistant Prosecuting Attorney that no corroborating evidence supported plaintiff's allegations.

Defendant maintains that plaintiff made contradictory allegations in her statements to the institutional investigator at ORW and to the Ohio State Highway Patrol [(*e.g.,* Defendant asked her to wait in the laundry room and she "sat and waited" or she "stood against the laundry rack" and waited]. Defendant argues that it is unreasonable to believe that [he] could have obtained plaintiff's attention by waiving to her through the eight inch square window in her closed bedroom door and that plaintiff repeatedly climbed in and out of her top bunk and opened and shut the door to her bedroom without waking the other inmates in the room.

Defendant also relies on discrepancies in her statements to the Ohio State Highway Patrol. In her statement, [Plaintiff] claimed that [Defendant] was not at work for the next couple of days, but in her statement to the ORW, plaintiff claimed that he returned the next night. Defendant also relies on the statements made by inmates concerning plaintiff's alleged comments she made to them about the time in question.

Defendant's motion for summary judgment is supported by statements by inmates who stated that they never saw [him] engage in inappropriate conduct with plaintiff or any other inmate. Plaintiff's bunkmate denied ever seeing [Defendant] motion for plaintiff to come out of the cell or that plaintiff mentioned [his] failure to lock their door. Defendant suggests that plaintiff waited until July 2009 to complain about the alleged incident because it allowed her ample to time to formulate her story and she avoided the grievance process as required under the Prison Litigation Reform Act. Plaintiff's three month delay in reporting her allegations prevented ORW from timely interviewing inmates prior to their transfers and/or release and DNA testing of plaintiff's sweatpants. Without Amanda Ritter's[1] incident report, counsel for defendant would not have been able to contact any inmates with any recollection of the matter.

Defendant argues that the evidence in this case is so one-sided that no reasonable jury could find in favor of the plaintiff. Plaintiff has offered nothing more than her unsupported, contradicted and self-serving accusations. Defendant, on the other hand, has offered the declarations of others, including inmates who refused to corroborate plaintiff's allegations and to whom she admitted that she had fabricated the allegations. Defendant also maintains that he is entitled to qualified immunity.

---

[1]Ms. Ritter is a nurse at ORW and Defendant's sister. She is also referred to as Amanda Shirk.

5

(Report and Recommendation at 2–4.) This Court also notes Defendant's argument that Plaintiff's purported fear of retaliation is not believable because ORW has "procedures in place for the female inmates to discreetly contact the institution's investigators to either ask questions, or report assaultive behavior," and Plaintiff would have been aware of these procedures through her orientation and flyers posted throughout the institution. (Def.'s Objection at 2.)

The Magistrate Judge next set forth Plaintiff's arguments:

> Plaintiff argues that Britton is asking this Court to weigh and decide the credibility of the witnesses and accept [Defendant]'s version of events as true. Plaintiff maintains, however, that there are genuine issues of fact that a jury must resolve. [Plaintiff] contends that this case involves two diametrically opposed versions of what happened between her and [Defendant]. [Plaintiff] maintains that [Defendant] sexually assaulted her, and [Defendant] insists that he did not.

> In support of his motion, [Defendant] attaches the declarations of four inmates who either claim that [Plaintiff] is lying or that they did not observe any inappropriate conduct on the part of [Defendant]. [Defendant] also attached the declarations of Amanda Shirk, a nurse at ORW and defendant [Defendant]'s sister, and Rick Rodger, an Assistant Union County Prosecuting Attorney. Plaintiff maintains that neither Shirk or Rodger's testimony would be admissible at trial. Shirk states that two inmates told her that [Plaintiff] had told them that she was lying, but this statement is inadmissible hearsay. While it is true that no DNA evidence was found, this makes sense given that [Plaintiff]'s sweatpants had been washed numerous times after the assault. Rodger's decision not to prosecute is irrelevant given that a different burden of proof applies in criminal and civil cases. [Plaintiff] maintains that if defendant intends to call Rodger to testify regarding his decisions not to prosecute, his testimony would arguably open the door to evidence that [Plaintiff] passed a polygraph test concerning her version of events and that [Defendant] refused to take a polygraph test.

> In his deposition, Britton testified that it was not appropriate to provide any personal information to inmates concerning where he lived or about his family. When she made her statement to investigators, [Plaintiff] reported that [Defendant] had told her that he was from Kenton and that he had children. The fact that [Defendant] is in fact from Kenton and does have children corroborates [Plaintiff]'s account of the conversation between them. Plaintiff further argues that the fact that [Defendant] submitted more declarations in support of his motion than [Plaintiff] attached to her response does not mean that a jury would necessarily find in

6

> [Defendant]'s favor. Plaintiff maintains that just as she is vulnerable to attacks on her credibility because of her status as a convicted felon, so too are the four inmates who offered declarations in support of [Defendant]'s motion for summary judgment.

*Id.* at 4–6.

The Magistrate Judge set forth the law related to qualified immunity, relying on cases that have been modified by more recent case law. However, that error is of no consequence here because his conclusion that Defendant is not entitled to qualified immunity is correct. The Court hereby replaces the portion of the Report and Recommendation in which the law on qualified immunity is set forth with the following:

Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals from liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). The doctrine balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. The accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.*

Analysis of qualified immunity entails two steps: (1) considering the allegations in the light most favorable to the party injured, whether a constitutional right has been violated; and (2) whether that right was clearly established. *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2009). The order of this inquiry is not mandatory, nor does a court need to reach both steps of the analysis. *Pearson*, 555 U.S. at 236. "Once the qualified immunity defense is raised, the

7

burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)).

Magistrate Judge Abel correctly determined that the constitutional right Plaintiff asserts is clearly established and that there is a genuine issue of material fact as to whether Defendant violated that right. As to his clearly established right analysis, the Magistrate Judge found that "the right of inmates to be free from cruel and unusual punishment is clearly established." (Report and Recommendation at 11.) The Court modifies that portion of the Magistrate Judge's report as follows:

For a right to be clearly established, "the contours of [the] right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). "In deciding whether a right has been clearly established, the Supreme Court has 'repeatedly' warned lower courts not to define the right at 'a high level of generality.'" *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012) (citing Ashcroft v. al-Kidd, 131 S. Ct. at 2084). Therefore, going "down the stairs of abstraction to a concrete, particularized description of the right. . . . [t]hough not too far down," the Court defines the right at issue here as one of a prisoner to be free from sexual assault by a prison guard. The Court finds that the contours of that right are sufficiently clear that every reasonable prison guard would have understood that forcing a prisoner to perform oral sex on him violates that right.

With regard to whether Plaintiff's constitutional rights were violated, the Magistrate Judge held:

8

> Here, there is a question of material fact. Clark alleges that she was forced to perform oral sex on defendant; Britton maintains that the incident never occurred. Although defendant relies on the affidavits of inmates to support his position, a jury must hear their testimony and make credibility determinations. Plaintiff, on the other hand, maintains that her version is supported by the fact that she voluntarily left the canine program, a special program designed for inmates who exhibited exemplary behavior. Clark was also aware of personal information concerning Britton, which he maintained he would not have shared with inmates. Summary judgment is inappropriate where, as here, a case turns on the credibility of the witnesses.

(Report and Recommendation at 10.)

## B. Defendant's Objection

Defendant objects to the Report and Recommendation, arguing that the "Magistrate Judge based the recommendation to deny Defendant Officer Britton's motion for summary judgment on less than a scintilla of evidence." (Def.'s Objection at 1.) He continues:

> In this case, Plaintiff's allegations, even construed in the light most favorable to the Plaintiff, fail to imply misconduct of any kind, let alone overcome Officer Britton's qualified immunity.

(Report and Recommendation at 9.) Specifically, Defendant asserts:

> The entire basis for denying summary judgment herein was premised on the Plaintiff's factual allegations that she "left the canine program" (R&R, Doc #: 41, PAGEID #: 314) and that she was aware that Officer Britton was from "Kenton and had children" (Id., PAGEID #'s: 309 and 314). Not only would this information not lead a reasonable jury to find that Officer Britton had sexually assaulted Plaintiff, but it is apparent that the Magistrate Judge did not give any consideration to Officer Britton's Reply in Support of Summary Judgment or its attached evidentiary material.

*Id.* at 1. Defendant's arguments are not well taken.

First, the evidence submitted by Plaintiff certainly does more than imply misconduct on Defendant's part. Plaintiff testified that he forced her to perform oral sex on him. This fact negates Defendant's contention that the Magistrate Judge's "entire basis" for his decision was Plaintiff's withdrawal from the canine program and her knowledge of personal information about

9

Defendant.

As to this latter evidence, Defendant argues throughout his Motion for Summary Judgment, Reply in Support of that Motion, Objection, and Response, that the Magistrate Judge improperly relied upon it because it could be explained away, or that there is a more reasonable interpretation of it. For example, Defendant contends that Plaintiff could have found out about his personal information from an inmate at ORW that had attended High School with Defendant; that the vents in the laundry room permit noise to escape to the rooms of other inmates so it was improbable that the assault could take place there; and, that it is more reasonable to believe that Plaintiff failed to utilize the procedures to report sexual assault because her story is false, than because she was afraid of retaliation regardless of the procedures. Accepting or rejecting the evidence as Defendant suggests however, requires this Court to look at the evidence in the light most favorable to him and to draw justifiable inferences in his favor. This Court is prohibited from doing what Defendant requests.

Further, as this Court has previously explained, "the fact that [certain] evidence may be considered self-serving goes to its weight, not its admissibility, and does prevent it [alone or in combination with other evidence] from amounting to more than the mere scintilla necessary to defeat a motion for summary judgment." *Ruff v. Wal-Mart Stores E., LP*, 2:07CV292, 2009 WL 3150319, at *7 (S.D. Ohio Sept. 30, 2009) ("Plaintiff's evidence may not hold up at trial, but at this point, . . . . the Court finds Plaintiff's submissions sufficient to withstand Defendants' motion for summary judgment . . . ."). If the admissible evidence before the Court is believed, it is sufficient for a reasonable jury to return a verdict in favor of Plaintiff.

Accordingly, viewing the evidence before the Court in the light most favorable to

10

Plaintiff, and drawing all justifiable inferences in her favor, the Court finds that Magistrate Judge Abel correctly determined that a genuine issue of material fact as to whether Defendant violated Plaintiff's clearly established right to be free from sexual assault by a prison guard while incarcerated. Thus, the Court **OVERRULES** Defendant's Objection.

## IV.

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Leave to File Untimely Response to Objection. (ECF No. 43). Further, for the reasons set forth above and in the Magistrate Judge's Report and Recommendation, the Court **OVERRULES** Defendant's Objection (ECF No. 42), **ADOPTS** the Report and Recommendation with the modifications stated herein (ECF No. 41), and **DENIES** Defendant's Motion for Summary Judgment (ECF No. 31). The Clerk is **DIRECTED** to set a status conference in this action forthwith.

**IT IS SO ORDERED.**

12-17-2013
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

11